# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT THOMAS, CDCR #E-88239, <br><br> Plaintiff, <br><br> vs. <br><br> W. L. MONTGOMERY, et al. <br><br> Defendants. | Case No.: 3:18-cv-01835-GPC-JLB <br><br> **ORDER:** <br><br> **1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]** <br><br> **AND** <br><br> **2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Albert Thomas ("Plaintiff") is currently incarcerated at Pelican Bay State Prison in Crescent City, California ("PBSP"). He is proceeding pro se, and has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (*See* Compl, ECF No. 1.)

Plaintiff claims the Wardens of Calipatria State Prison ("CAL") and PBSP, together with CAL correctional and California Department of Corrections and Rehabilitation ("CDCR") appeals officials, violated his due process rights during a 2015 disciplinary proceeding at CAL which resulted in his administrative segregation for 184

days and an adverse transfer to PBSP. (*Id.* at 1-6.) Plaintiff further claims several CAL officials confiscated, destroyed, or lost his personal property by failing to properly inventory and transfer it to PBSP, and CDCR appeals officials failed to provide him a meaningful remedy for that loss. (*Id.* at 9-10.) He seeks $25,000 in general and punitive damages against each Defendant, and "any other relief the court deems proper" to "deter future conduct." (*Id.* at 12.)

Plaintiff did not prepay the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action at the time he filed his Complaint; instead, he submitted a Certificate of Funds and a certified copy of his CDCR Inmate Trust Account Statement Report (ECF No. 2), which the Court construes as a Motion for Leave to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).

## I. Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook,* 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ S. Ct. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

///

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In lieu of an IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report, as well as a Certificate of Funds issued by a PBSP accounting official which attests as to his balances and deposits over the 6-month period preceding the filing of his Complaint. *See* ECF No. 2 at 1-3; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff had an average monthly balance of $2.32, but no money deposited to his trust account for the 6-months preceding the filing of this action, and no available money on the books at the time of filing. *See* ECF No. 2 at 1-2. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered.").

Therefore, the Court construes Plaintiff's trust account statements as a Motion to Proceed IFP (ECF No. 2), **GRANTS** him leave to proceed IFP, declines to "exact" any

3

3:18-cv-01835-GPC-JLB

initial filing fee because his trust account statement shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Acting Secretary of the California Department of Corrections and Rehabilitation ("CDCR") to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**II.    Screening of Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A.    <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). A complaint is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Factual Allegations

On June 24, 2015, while he was incarcerated at CAL, Plaintiff was "placed in administrative segregation" ("Ad-Seg") pending a CDCR 115 investigation and disciplinary hearing after a weapon was found inside a mattress in the cell he shared with another inmate named Banks. (*See* Compl., ECF No. 1 at 4, 7.) Plaintiff claims Lt. Coronado, the Senior Hearing Officer ("SHO"), refused to consider exculpatory evidence during his disciplinary hearing, and both he and his cellmate were "found guilty of the charge." (*Id.* at 4-6.) As a result, Plaintiff claims he was "improperly" confined to Ad-Seg for 184 days, and then transferred to PBSP, a "maximum security prison." (*Id.* at 4.)

Plaintiff claims to have challenged his disciplinary conviction in a prison grievance "that raised … procedural due process" violations, but Warden Montgomery, Associate Warden Pollard, Lt. Coronado, Chief Appeals Officer Voong, and Lt. Beltran "recklessly disregarded [his] rights" when they reviewed that grievance and denied it. (*Id.* at 5-6.)

Plaintiff further alleges Sgt. Garcia confiscated a pair of head phones as contraband while he and Banks were asked to inventory their property on June 26, 2015. (*Id.* at 7.) Plaintiff contends Garcia told him to "fill out a trust withdrawal form" so the headphones could be sent home or donated, but Plaintiff "found out a month or so later" that Garcia did not mail his headphones home and "kept them" instead. (*Id.*) Plaintiff claims he filed a "602 (inmate grievance) for the missing property," but Garcia "[e]ntered false documentation into [his] appeals process … to make it seem as if [he] was lying." (*Id.*)

After he was transferred to Corcoran in route to PBSP, Plaintiff claims Lt. Beltran "called to tell [him] that he was going to partially grant [his] 602 and give [him] a new TV," but Plaintiff refused to sign the form Beltran provided for that purpose because "signing would prohibit him from pursuit of the rest of his property 602." (*Id.* at 8.)

Finally, Plaintiff claims that he arrived at PBSP on January 6, 2016, "with about 10 boxes of property," but when it was released to him on April 4, 2016, there were only "2 ½ boxes." (*Id.* at 8.) Upon receipt, Plaintiff discovered his clothing had been placed in plastic bags with food condiments spilled on them, the boxes contained some items that were not his, and his photos and shoes "looked as if they were dug out of the trash." (*Id.*) Plaintiff filed "another 602" at PBSP regarding the condition and loss of his property, but it was denied during a "flawed grievance system" employed by Sgt. Davis, Warden Ducart, and Chief Appeals Officer Voong. (*Id.* at 9-10.)

Based on these events, Plaintiff claims Defendants Montgomery, Beltran, Coronado, Pollard, Ducart, Davis, Garcia, and Voong all deprived him of both his liberty and property without due process and in violation of the Fourteenth Amendment. (*Id.* at 4-6, 7-10.)

C. Disciplinary Proceedings

First, to the extent Plaintiff alleges Defendant Coronado violated his due process rights by failing to allow him to submit "favorable documentary evidence" during the CAL disciplinary hearing which resulted in a 184-day Ad-Seg placement and his subsequent transfer to PBSP, *see* Compl., ECF No. 1 at 4, he fails to state Fourteenth Amendment claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a

plaintiff] must generally allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). But "[d]ue process 'is a flexible concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the

7

procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Plaintiff claims he had a "liberty interest in remaining free of placement in Ad-Seg," *see* Compl., ECF No. 1 at 5, but that is "no more than [a] conclusion" and insufficient to show he is entitled to relief. *See Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

And while Plaintiff does allege to have been segregated for 184 days as a result of his disciplinary offense, and to have suffered an "adverse" transfer from CAL to PBSP as a result, *see* Compl., ECF No. 4, he fails to allege any further factual content to show that these deprivations imposed the type of "atypical and significant hardship" required by *Sandin* to invoke a liberty interest requiring *Wolff's* procedural safeguards. *See Serrano,* 345 F.3d at 1077 (quoting *Sandin*, 515 U.S. at 484). "Typically, administrative segregation *in and of itself* does not implicate a protected liberty interest." *Id.* at 1078 (emphasis added) (finding 14-month sentence to "administrative segregation alone" insufficient to "implicate a protected liberty interest."); *Sandin*, 515 U.S. at 486 (finding 30-day sentence to segregated housing unit where conditions "mirrored those … imposed upon inmates in administrative segregation and protective custody," "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

Moreover, while Plaintiff claims he was transferred to PBSP, a "maximum security prison," *see* Compl., ECF No. 1 at 4, he does not explain how or to what extent his transfer to PBSP imposed any "atypical and significant hardship on [him] in relation to the ordinary incidents of [his] prison life" at CAL or elsewhere, *see Sandin*, 515 U.S. at 484, and "[t]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221;[2] *see*

---

[2] "Centinela State Prison provides for the confinement of General Population, Level I, Level III inmates, Level III sensitive needs and maximum security (Level IV) inmates." *See* https://www.cdcr.ca.gov/

*also Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating due process). Finally, Plaintiff does not allege that his disciplinary conviction "invariably affect[ed] the duration of his sentence." *Ramirez*, 334 F.3d at 861; *see also Hicks v. Doe*, No. EDCV1801505ABRAO, 2018 WL 4637961, at *5 (C.D. Cal. Sept. 25, 2018).

For these reasons, the Court finds Plaintiff's Complaint fails to adequately allege the deprivation of a protected liberty interest in violation of the Fourteenth Amendment rights with respect to his CAL disciplinary conviction. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### D. Grievance Processing

Plaintiff also fails to state a plausible due process claim against Defendants Montgomery, Pollard, Coronado, Voong, and Beltran, to the extent he alleges they "recklessly disregarded [his] rights" when reviewing his disciplinary grievance, *see* Compl., ECF No. 1 at 5-6, or against Defendants Garcia, Beltran, Davis, Ducart and Voong, to the extent he challenges validity of their decisions with respect to the processing or outcomes of his inmate property appeals. *Id.* at 7-10.

///

---

Facilities_Locator/CEN.html (last visited Oct. 22, 2018). "Pelican Bay State Prison (PBSP) is designed to house California's most serious criminal offenders in a secure, safe, and disciplined institutional setting. Half of the prison houses maximum security inmates in a general population (GP) setting. The other half houses inmates in the Security Housing Unit (SHU), designed for inmates presenting serious management concerns." *See* https://www.cdcr.ca.gov/Facilities_Locator/PBSP.html (last visited Oct. 22, 2018). However, PBSP *also* houses General Population (GP) and Restricted Custody General Population (RCGP) inmates in a "96-bed unit designed as a transitional program for inmates who are recently released from the SHU to GP that have custodial/security/safety concerns." *Id.* In addition, PBSP "operates a 400-bed, Level I Minimum Support Facility, which houses non-violent offenders outside of the secure perimeter of the main institution, and a Firehouse with eight full time inmate firefighters." *Id.* As noted above, Plaintiff does not allege whether or how his custody level at either CAL or PBSP changed, nor does he otherwise describe the nature or "degree of restraint imposed" as a result of his disciplinary conviction, segregation, or transfer to PBSP. *See Ramirez*, 334 F.3d at 861.

A prison official's allegedly improper processing of an inmate's grievances or appeals, without more, cannot serve as a basis for section 1983 liability. *See generally Ramirez*, 334 F.3d at 860 (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Daniels v. Aguilera*, No. 2:16-CV-00996-JAM-CKD P, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), *report and recommendation adopted sub nom. Daniels v. Aguillera*, No. 2:16-CV-00996-JAM-CKD P, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances.").

For these reasons, Plaintiff's conclusory allegations that all Defendants abused their "pos[tions] of power" by denying his CDCR 602s, *see* Compl., ECF No. 1 at 9-10, are simply insufficient to state a plausible due process claim upon which § 1983 relief may be granted. *See Iqbal*, 556 U.S. at 680-84 (citations omitted); *Valdivia v. Tampkins*, No. EDCV 16-1975 JFW (JC), 2016 WL 7378887, at *6 (C.D. Cal. Dec. 19, 2016) (sua sponte dismissing claims predicated upon the alleged improper processing of inmate grievances); 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

///
///

10

3:18-cv-01835-GPC-JLB

E. Property Deprivation Claims

Lastly, to the extent Plaintiff claims Defendants confiscated, lost and/or damaged his headphones and other personal property when they packed and shipped it to him at PBSP, *see* Compl., ECF No. 1 at 7-10, he also fails to allege facts sufficient to support any due process violation. *See Iqbal*, 556 U.S. at 676.

Plaintiff does not have a Fourth Amendment right to be free from the search or seizure of his personal property. *Hudson v. Palmer*, 468 U.S. 517, 536 (1984); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). "[T]he fourth amendment does not protect an inmate from the seizure and destruction of his property." *Taylor*, 871 F.2d at 806. Instead, a prisoner's redress for the seizure of his personal property, if any, is through the Fourteenth Amendment. *Id.; see also Sanchez v. Cty. of Kern*, No. 1:16-CV-00153-LJO-MJS PC, 2016 WL 1461515, at *3 (E.D. Cal. Apr. 14, 2016).

As noted above, "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson,* 545 U.S. at 221; *Wolff*, 418 U.S. at 556. Prisoners *do* have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974), but Supreme Court precedent makes clear that the procedural component of the Due Process Clause is not violated by the type of random, unauthorized deprivations of property Plaintiff alleges to have suffered in this case if the state provides him with an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810-895).

Plaintiff alleges Defendant Garcia personally confiscated his headphones, and that other unidentified CAL officials responsible for packing and shipping his personal property to him at PBSP either lost, mistreated, and/or destroyed some of it. (*See* Compl., ECF No. 1 at 7-9.) But he has no cognizable due process claim with respect to any Defendants' allegedly unauthorized deprivation of his personal property, whether intentional or negligent, since a meaningful state post-deprivation remedy for his loss is

available to him. *See Hudson*, 468 U.S. at 533. California's tort claim process provides that adequate post-deprivation remedy. *Barnett*, 31 F.3d at 816-17 ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *see also Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); *Kemp v. Skolnik*, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to *Hudson* and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

For all these reasons, the Court finds Plaintiff's Complaint fails to allege any plausible claim for relief, and therefore, it must be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez,* 203 F.3d at 1126-27; *Rhodes,* 621 F.3d at 1004.

F.     Leave to Amend

In light of his pro se status, the Court **GRANTS** Plaintiff leave to amend his due process claims with respect to the CAL disciplinary proceeding which resulted in his Ad-Seg placement and transfer to PBSP. *See Rosati v. Igbinoso,* 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

As to Plaintiff's remaining inmate grievance-processing and property deprivation claims, however, the Court **DENIES** leave to amend as futile. *Id.* at 1039 (leave to amend is not required if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal citations omitted); *Everett v. Brazelton*, 588 F. App'x 688 (9th Cir. 2014) (affirming dismissal of California prisoner's Due Process claims based on lost property because amendment as to those claims "would have been futile.") (citing *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 861-17); *Bearchild v. Cobban*, No.

CV 14-31-H-DLC, 2015 WL 627732, at *5 (D. Mont. Feb. 9, 2015) (dismissing inmate grievance processing allegations for failing to state a claim and without leave to amend because this pleading defect could "not be cured by the allegation of additional facts.").

### III. Conclusion and Orders

For the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted, *as to the due process claims related to his CAL disciplinary proceeding and conviction only*. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an

13

3:18-cv-01835-GPC-JLB

amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: October 25, 2018

Hon. Gonzalo P. Curiel
United States District Judge