# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT THOMAS, CDCR #E-88239,<br><br>Plaintiff,<br><br>vs.<br><br>W. L. MONTGOMERY, et al.<br><br>Defendants. | Case No.: 3:18-cv-01835-GPC-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Dkt. No. 23.]** |

Before the Court is Defendants J. Garcia, J. Ramirez, Jr., A. Beltran and J. Coronado's motion to dismiss the first amended complaint. Plaintiff did not file an opposition. The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

**Procedural Background**

Plaintiff Albert Thomas ("Plaintiff"), a prisoner currently incarcerated at North

Kern State Prison in Delano, California, proceeding pro se and in forma pauperis ("IFP"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on August 6, 2018. (Dkt. No. 1, Compl.) Plaintiff claimed the Wardens of Calipatria State Prison ("CAL") and Pelican Bay State Prison ("PBSP"), together with CAL correctional and California Department of Corrections and Rehabilitation ("CDCR") appeals officials, violated his due process rights during a 2015 disciplinary proceeding at CAL which resulted in his administrative segregation for 184 days and an adverse transfer to PBSP. (*Id.* at 1-6, 14.[1]) Plaintiff further claims several CAL officials confiscated, destroyed, or lost his personal property by failing to properly inventory and transfer it to PBSP, and CDCR appeals officials failed to provide him a meaningful remedy for that loss. (*Id.* at 9-10.)

On October 25, 2018, the Court granted Plaintiff's motion to proceed IFP but simultaneously dismissed his complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. (Dkt. No. 3.) Plaintiff was granted leave to file an amended pleading in order to correct the deficiencies of pleading identified in the Court's Order. (*See id.* at 13-14.) Plaintiff failed to timely comply with the Court's Order and the entire matter was dismissed on December 21, 2018. (Dkt. No. 5.) Plaintiff later sought leave of Court to vacate the judgment entered and file his amended pleading which was granted by this Court on January 16, 2019. (Dkt. No. 10.) On February 22, 2019, Plaintiff filed his First Amended Complaint ("FAC"). (Dkt. No. 12.)

On *sua sponte* review of the FAC, the Court dismissed Defendants PBSP Warden Ducart, Davis, W.L. Montgomery, M. Pollard, and M. Voong pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) for failing to state a claim upon which § 1983 may be granted and directed that summons be issued as to Defendants Correctional Officer Ramirez, A. Beltran, Lt. Coronado, and Sergeant Garcia. (Dkt. No. 13.)

The remaining Defendants move to dismiss the First and Fourteenth Amendment

---

[1] Page numbers are based on the CM/ECF pagination.

claims against Defendant A. Beltran; the Fourteenth Amendment claim against Defendants Ramirez, Coronado, and Beltran; and the Eighth Amendment claim against Defendant Ramirez. (Dkt. No. 23.) No opposition was filed by Plaintiff.

**Factual Allegations**

On June 24, 2015, while he was incarcerated at CAL, Plaintiff was placed in administrative segregation ("Ad-Seg") pending a CDCR 115 investigation and disciplinary hearing after a weapon was found inside a mattress in the cell he shared with another inmate named Banks. (Dkt. No. 12, FAC at 6-8.) Plaintiff gave his statement to a correctional officer and asked her to "relay a few questions" to Correctional Officer Ramirez. (*Id.* at 7.) Plaintiff also requested that the mattresses in the cell be photographed so that he would be able to provide documentary evidence that was "needed for Plaintiff's defense against the charged offense." (*Id.*) He further claims that Ramirez "knowingly wrote a false CDCR rules violation report in an attempt to punish Plaintiff just because." (Id. at 6.) Plaintiff claims he was "improperly" confined to Ad-Seg for 184 days, lost 360 days behavior credit and 10 days loss of yard. (*Id.* at 9.)

Plaintiff claims that "once J. Coronado, A. Beltran, M. Pollard, M. Voong, and W.L. Montgomery were made aware of these facts, each defendant" had an "obligation to correct the problem." (*Id.*) Plaintiff claims these Defendants "willfully, willingly, aggressively, and recklessly disregarded their own rules and regulations" from the "very start." (*Id.*)

In addition, Plaintiff claims to have engaged in a "heated exchange" with Sergeant Garcia regarding how his property was to be treated and told Garcia that he would "be written up for said treatment." (*Id.* at 10.) Plaintiff alleges, as a result, Garcia "retaliated against him" when he "grabbed Plaintiff's headphones." (*Id.*) Garcia allegedly took the headphones from Plaintiff, stated that the headphones had been "altered," and told Plaintiff that he would "either have to send them home or donate them." (*Id.*) Plaintiff "opted to send them home" and was instructed to "fill out" a "trust withdrawal form." (*Id.*) Plaintiff claims he filed an administrative grievance when he later learned that

1 Garcia had not "mailed Plaintiff's headphones home." (*Id.*) He claims Garcia "introduced false evidence" into Plaintiff's grievance to "make it seem as if Plaintiff was providing false information into the appeals process." (*Id.*)

Plaintiff also alleges "A. Beltran conspired to aid" Garcia in his retaliatory acts "against Plaintiff" when Beltran "introduced a scheme to deny Plaintiff his full compensation." (*Id.* at 11.) Beltran "contacted Plaintiff offering only a TV if Plaintiff would sign away any chance of recovering the rest of his compensation." (*Id.*)

Plaintiff claims he suffered "atypical and significant hardship" when he was housed in Ad-Seg. (*Id.* at 12.) Some of these alleged hardships include losing his prison job, losing the opportunity for an early hearing with the parole board, being placed in "shackles and cuffs" each time he left his cell, loss of yard time, and suffering from additional health problems. (*Id*. at 12-14.)

## Discussion

### A. Legal Standard on Motion to Dismiss

Federal Rule of Civil Procedure12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**B.     Fourteenth Amendment Claim Against Beltran**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

"[V]icarious liability is inapplicable to . . . § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," in order to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego,* 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant.").

"Liability under section 1983 arises only upon a showing of personal participation by the defendant . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the

violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Defendants argue that Plaintiff does not allege specific facts as to Beltran's involvement in the alleged constitutional violation as a supervisor.

Here, the FAC identifies Beltran as a Correctional Lieutenant who is assigned to work at any given time, "along with any and all subordinates who are assigned to work and report to him." (Dkt. No. 12, FAC at 4.) He alleges that Beltran relied on his underlings and did not fact check that he was placed in the program office, stripped naked and searched for weapons and contraband but none were found on him. (*Id.* at 6.) Once Beltran was made aware of the facts he had an obligation to correct the problem. (*Id.* at 9.) Plaintiff was confined to Ad-Seg for 184 days and lost 360 behavioral credits along with ten days loss of yard. (*Id.*)

Here, the FAC does not allege any specific facts that Beltran "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *See Taylor*, 880 F.2d at 1045. Conclusory allegations that as a supervising officer he knew the facts of the incident after it occurred is not sufficient to state a claim. *See Duero-Young v. City of Oceanside*, 18cv1569-H(MDD), 2018 WL 4680128, at *3 (S.D. Cal. Sept. 27, 2018) (knowledge alone without specific facts is insufficient to state a claim against supervisor). Accordingly, the Court GRANTS Defendants' motion to dismiss the Fourteenth Amendment claim against Beltran.

## C. First Amendment Claim Against Beltran

Prisoners have a First Amendment right to file prison grievances. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (same). Therefore, retaliation for a prisoner having exercised those rights is a violation of the Constitution. *Rhodes,* 408 F.3d at 567. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor

took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.

Defendants argue that the FAC fails to allege an adverse action was taken against Plaintiff and also that Beltran acted because of the protected conduct of filing a grievance.

Here, the FAC alleges Plaintiff filed an inmate appeal regarding the loss of his headphones and television. (Dkt. No. 12, FAC at 10-11, 33, 35.) The FAC claims that despite knowing that Plaintiff's appeal concerning damage to his TV would be granted, Beltran made a settlement offer of only a TV if Plaintiff would sign away any chance of recovering the rest of his compensation. (*Id.* ¶ 11.) However, a settlement offer to resolve an administrative grievance does not state a colorable claim for retaliation. *See Oliver v. Chesser*, No. 08cv2524 LKK GGH P, 2012 WL 3283438, at *8 (E.D. Cal. Aug. 10, 2012) (informal settlement offer made to resolve plaintiff's then-pending administrative grievance "do not necessarily result in colorable claims for retaliation"). It is unclear how a settlement offer, implicitly providing an option to accept or reject, could constitute an adverse action in retaliation for exercising Plaintiff's right to file a grievance. Accordingly, the Court GRANTS Defendants' motion to dismiss the First Amendment retaliation claim against Defendant Beltran. *See Rhodes*, 408 F.3d at 567–68 (stating that retaliation claims require an adverse action, motivated by a "prisoner's protected conduct," which has the effect of chilling the "exercise of First Amendment rights" and does not "reasonably advance a legitimate correctional goal").

**D.     Fourteenth Amendment Claims Against Defendants Ramirez, Coronado, and Beltran**

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV. Prisoners may not be deprived of a property or liberty interest

without due process. *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974). To invoke the protections of the Due Process Clause, Plaintiff must establish the existence of a liberty or property interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In the prison context, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* *Sandin* "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardships caused by the prison's challenged action relative to 'the basic conditions of life as a prisoner.'" *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (quoting *Sandin*, 515 U.S. at 485). Due process protections are implicated if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). Courts should consider three guideposts in framing the inquiry: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Placement in administrative segregation, alone, generally does not implicate a protected liberty interest but the conditions imposed due to the administrative segregation may give rise to a liberty interest. *Id.* at 1078-79 (while administrative segregation alone does not implicate liberty interest, the plaintiff's disability along with the conditions imposed that were not designed for disabled persons gave rise to a protected liberty as it

constituted an atypical and significant hardship on the prisoner).

Defendants argue that Plaintiff fails to state a due process claim as prisoners do not have a constitutional right to be free from falsified disciplinary reports and prisoners do not have a liberty interest in remaining free from disciplinary segregation.

The Court agrees with Defendants that Plaintiff does not a have a liberty interest to be free from "wrongfully issued disciplinary reports", *see Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949 (2d Cir.1986); *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir.1984)), and being placed in Ad-Seg. *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence"). Therefore, the Court GRANTS Defendants' motion to dismiss as to the Fourteenth Amendment claim concerning his claim that he was falsely accused of a crime and his placement in Ad-Seg.

However, Plaintiff additionally argues that he suffered numerous other alleged "atypical and significant hardship[s]" due to his placement in Ad-Seg. He claims losing his level 3 status and chance to transfer; losing his prison job; losing the opportunity for an early hearing with the parole board; being placed in "shackles and cuffs" each time he left his cell; loss of yard time; loss of ability to be outside of his cell; being stripped naked, bent over and required to cough before going to the yard and before returning to his cell; inability to bring his "points down" and in fact his points increased when he was placed in Ad-Seg; transfer to PBSP, a maximum security prison, causing him to lose most of his personal property; inability to engage in vocational training, and suffering from additional health problems due to the cold conditions at PBSP. (*Id*. at 12-14.) Defendants fail to address whether each of these alleged hardships implicate a liberty interest. Accordingly, the Court DENIES Defendants' motion to dismiss on these claims.

**E.     Eighth Amendment Claim Against Ramirez**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth

Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An Eighth Amendment violation must satisfy two elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," that is, "one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837.

It has been held that the "'[t]he issuance of Rules Violation Reports, even if false, does not rise to the level of cruel and unusual punishment.'" *Hutchinson v. Infante*, No. 2:16-cv-0114 KJM AC P, 2017 WL 1709474, at *2–3 (E.D. Cal. May 3, 2017) (quoting *Cauthen v. Rivera*, No. 1:12-cv-01747 LJO DLB PC, 2013 WL 1820260, at *10 (E.D. Cal. Apr. 30, 2013)); *see also Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. June 1, 2012) ("[P]laintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendants issued a false rules violation against plaintiff.").

Here, the FAC alleges that Ramirez violated the Eighth Amendment by issuing a false rules violation report to punish Plaintiff. (Dkt. No. 12, FAC at 6.) The issuance of a false rules violation report does not state an Eighth Amendment claim. Therefore, the Court GRANTS Defendants' motion to dismiss the Eighth Amendment claim against Defendant Ramirez.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.[2] Specifically, the Court GRANTS dismissal of the First and Fourteenth Amendment claims against Defendant Beltran, the Fourteenth Amendment

---

[2] Defendants suggest that the only claim remaining if the Court were to grant their motion would be the First Amendment claim against Defendant Garcia. However, the FAC alleges a due process claim against Defendant Coronado for refusing to allow Plaintiff to submit exculpatory evidence during his disciplinary hearing. (Dkt. No. 12, FAC at 2, 8.) Thus, this claim remains.

10

claims against Defendants Ramirez, Coronado, and Beltan but only as to his placement in Ad-Seg and being free from falsified disciplinary reports, and the Eighth Amendment claim against Defendant Ramirez. The remaining claims are the Fourteenth Amendment due process claim against Defendants Ramirez, Coronado and Beltran concerning the atypical and hardships described above, the First Amendment retaliation claim against Defendant Garcia and the Fourteenth Amendment due process claim against Coronado.

IT IS SO ORDERED.

Dated: December 3, 2019

Hon. Gonzalo P. Curiel
United States District Judge